UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
NICHOLAS M. PALM,                                :
               Plaintiff,                        :
v.                                               :     **OPINION AND ORDER**
                                                 :
SERGEANT JESSICA BROOKS and                      :     22 CV 9729 (VB)
TROOPER NATHANEAL SCHOCK,                         :
               Defendants.                     :
------------------------------------------------------------x

Briccetti, J.:

Plaintiff Nicholas M. Palm, proceeding pro se and in forma pauperis, brings this action

against defendants City of Newburgh Police Department Sergeant Jessica Brooks and New York

State Police Sergeant Nathaneal Shock.  Plaintiff alleges that, on July 29, 2022, Brooks and

Schock used excessive force against him in connection with his arrest, causing a leg injury.

Plaintiff asserts claims under Section 1983 for violation of his Fourth Amendment rights.

Now pending are the parties' cross-motions for summary judgment.  (Docs. ##91, 97,

104).[1]

For the reasons set forth below, defendants' motions are DENIED and plaintiff's cross-

motion is DENIED.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

---

[1]     Plaintiff, without leave and without previously indicating an intent to file, filed his own
motion for summary judgment on or about July 31, 2025.  (Doc. #104).  Defendants ask the
Court to disregard plaintiff's motion as untimely.  When, as here, cross-motions present
coextensive issues, "[t]he opposing party suffers little prejudice" from an untimely motion "as it
cannot claim to have been unaware of or surprised by the court's consideration of those issues."
Camacho v. City of Buffalo, 2021 WL 9079983, at *8 (W.D.N.Y. Oct. 14, 2021).  Therefore, in
consideration of the lack of prejudice to defendants and plaintiff's pro se status, "the Court
declines [d]efendant[s'] invitation to disregard [p]laintiff's cross-motion as untimely." Hahnel v.
United States, 782 F. Supp. 2d 20, 30 (W.D.N.Y. 2011).

Plaintiff will be provided copies of all unpublished opinions cited in this decision.  See
Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009) (per curiam).

1

**BACKGROUND**

Together, the parties' submissions reflect the following background.

On the evening of July 29, 2022, around 9:50 p.m., the City of Newburgh police dispatcher received an anonymous call reporting a belligerent individual with a gun by the Goldback Deli on 97 Fullerton Avenue. The individual was described by the caller as a "light-skinned Hispanic dude" with a beard, wearing gym shorts. At around 9:54 p.m., Brooks and Schock arrived outside of the Goldback Deli. When they arrived, they saw plaintiff standing by a car. Plaintiff had a beard and was wearing gym shorts. When the officers got out of the car and walked towards plaintiff, he turned to walk away with his back towards the officers. Schock ordered plaintiff to stop and gestured for him to come over. Plaintiff continued to walk away, not acknowledging the officers. Brooks also ordered him to "come here." Defendants allege plaintiff began reaching his hand towards his waist band as he walked away. Schock says he then grabbed plaintiff's left arm. Brooks claims she repeatedly directed plaintiff to take his hands out of his waistband and pocket. Plaintiff asserts he did not reach into his waist band at any point.

Over the next twenty seconds, Brooks struggled with plaintiff and attempted to gain control of plaintiff's right arm so he could be handcuffed. Plaintiff resisted. After a continued struggle, Schock attempted to take plaintiff to the ground while plaintiff shouted for Schock to "get off of me." As Schock grabbed plaintiff, the two spun around until they both fell onto the ground, with plaintiff on top of Schock. Both defendants shouted at plaintiff to stop as he continued to struggle on top of Schock. Plaintiff continued to yell at the defendants to get off him. At that point additional officers arrived on the scene and assisted Brooks in handcuffing

2

plaintiff.  Defendants each took one of plaintiff's arms and brought him to his feet, despite his resistance.

Plaintiff testified that when he saw the police walking towards him, he "started walking away with [his] back towards them" because he did not know whom they were talking to.  (Doc. #92-1 ("Pl. Dep. Tr.") at 51, 54).  According to plaintiff, the next thing he knew the two officers grabbed him, shoved him against the wall, slammed him to the ground, and jumped on top of him.  Plaintiff explained he tried to pull his hands away to get free because he had not done anything wrong.  Plaintiff testified that while he was on the ground he felt a sharp pain in his leg, which he attributed to Schock or Brooks "stepp[ing]" or "stomp[ing]" on him.  (Id. at 62–63).  In addition, plaintiff alleges the officers hyperextended his arm, causing him pain.

After handcuffing plaintiff, Brooks, along with a non-party officer, performed a pat down and recovered a Taurus 709 Slim 9mm handgun in plaintiff's pocket.  Plaintiff was arrested for criminal possession of a weapon in the second degree in violation of N.Y. Penal Law § 265.03, criminal possession of a weapon in the third degree in violation of N.Y. Penal Law § 265.02, resisting arrest in violation of N.Y. Penal Law § 205.30, and obstructing governmental administration in the second degree in violation of N.Y. Penal Law § 195.05.  Following his arrest, plaintiff was driven to St. Luke's Hospital, where he was examined and diagnosed with a left hamstring strain.  Plaintiff had a history of trauma to his left thigh and surrounding areas after being hit by a car on or about January 2, 2017.  At the hospital, plaintiff denied any other injuries or pain.

After trial in Orange Country Court, plaintiff was convicted of criminal possession of a weapon in the second degree.  He is currently serving a prison sentence of twelve and a half years.

**DISCUSSION**

I.    Standard of Review

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp v. Catrett, 477 U.S. 317, 322 (1986). [2]

A fact is material when it "might affect the outcome of the suit under the governing law . . . .  Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248.  The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried."  Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 60 (2d Cir. 2010).  It is the moving party's burden to establish the absence of any genuine issue of material fact.  Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).

If the non-moving party fails to make a sufficient showing on an essential element of its case on which it has the burden of proof, then summary judgment is appropriate.  Celotex Corp. v. Catrett, 477 U.S. at 323.  If the non-moving party submits "merely colorable" evidence, summary judgment may be granted.  Anderson v. Liberty Lobby, Inc., 477 U.S. at 249–50.  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts and may not rely on conclusory allegations or unsubstantiated speculation."

---

[2]    Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011).  "[T]he mere existence of a scintilla of evidence" supporting the non-moving party's position is likewise insufficient; there must be evidence on which the jury could reasonably find for him.  Dawson v. County of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the Court construes all facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party.  Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).  If there is any evidence from which a reasonable inference could be drawn in the non-movant's favor, on the issue on which summary judgment is sought, summary judgment is improper.  Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82–83 (2d Cir. 2004).

If a moving party offers video evidence "whose accuracy is unchallenged" in support of a motion for summary judgment, such evidence "should be credited by the court on such a motion if it so utterly discredits the opposing party's version that no reasonable juror could fail to believe the version advanced by the moving party."  Zellner v. Summerlin, 494 F.3d 344, 371 (2d Cir. 2007).  That said, "if the video evidence does not conclusively resolve material fact issues, summary judgment based on that evidence alone is not appropriate."  Alvear v. Kamel, 2023 WL 5593914, at *2 (E.D.N.Y. Aug. 29, 2023).

In general, the Court may not evaluate the credibility of witness testimony on summary judgment; this assessment is exclusively the province of the jury.  See Fincher v. Depository Tr. & Clearing Corp., 604 F.3d 712, 725–26 (2d Cir. 2010).

Finally, "it is well established that a court is ordinarily obligated to afford a special solicitude to pro se litigants, particularly where motions for summary judgment are concerned."  Harris v. Miller, 818 F.3d 49, 57 (2d Cir. 2016).

5

II.    Analysis

Defendants argue they are entitled to summary judgment because the record and video evidence demonstrate they did not use excessive force against plaintiff.  Plaintiff contends summary judgment in his own favor is proper because Brooks and Schock used excessive force as a matter of law.

The Court finds neither party is entitled to summary judgment because a genuine dispute of material fact exists as to whether defendants used excessive force against plaintiff.

A.    Legal Standard

"A police officer violates the Fourth Amendment if the amount of force he uses in effectuating an arrest is objectively unreasonable in light of the facts and circumstances confronting the officer."  Lennox v. Miller, 968 F.3d 150, 155 (2d Cir. 2020) (quoting Graham v. Connor, 490 U.S. 386, 397 (1989)).  Determining "whether an officer has used excessive force requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  Kisela v. Hughes, 584 U.S. 100, 103 (2018).  "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  Id.

"The fact that a person whom a police officer attempts to arrest resists no doubt justifies the officer's use of some degree of force, but it does not give the officer license to use force without limit."  Brown v. City of New York, 798 F.3d 94, 103 (2d Cir. 2015).  Because police officers often must use some degree of force when arresting or otherwise lawfully "seizing" an individual, the Supreme Court has recognized that "[n]ot every push or shove, even if it may

6

later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment."

Graham v. Connor, 490 U.S. at 396. "An arrestee must prove some injury, even if insignificant,

to prevail in an excessive force claim." Landy v. Irizarry, 884 F. Supp. 788, 798 n.14 (S.D.N.Y.

1995)

      B.     Application

Here, it is genuinely disputed whether Brooks and Schock used excessive force against

plaintiff. The inquiry into whether the officers used excessive force requires careful attention to

the facts and circumstances of this case, including whether Palm posed an immediate threat to

the safety of the officers or others, and whether he was actively resisting arrest or attempting to

evade arrest by flight. Kisela v. Hughes, 584 U.S. at 103. Such questions implicate triable issues

of fact and cannot be resolved at summary judgment.

The parties present divergent accounts of the facts at issue, all of which go to the heart of

plaintiff's claim. According to plaintiff, the officers "grabbed him with unnecessary force . . .

shoved him to the ground, [and] jumped on top of him causing [his] injury." (Doc. #104 at ECF

1). Defendants deny slamming plaintiff into the ground or jumping on him. (Doc. #94 at 7).

More specifically, Shock says that plaintiff was the one who landed on top of Schock as they

struggled. (Id.). Further, Schock argues that he "braced his other hand against Plaintiff's

shoulder so that he and Sergeant Brooks were not just pulling Plaintiff up by his arms," such that

plaintiff's arms were not hyperextended at any point. (Id. at 8). Plaintiff also testified that one

of the defendants "stepped," "stomped," "or dropped a knee into the back of [his] leg." (Pl. Dep.

Tr. at 62). Both officers argue that it would not have been possible for them to do so based on

their positioning during the altercation. (Docs. ##94 at 8, 99 at 7).

At summary judgment, the Court cannot credit the testimony of Brooks and Schock over plaintiff, or vice versa; nor can it determine the credibility of any witness. Fincher v. Depository Tr. & Clearing Corp., 604 F.3d at 725–26.

Moreover, contrary to the parties' arguments, the video evidence is simply not clear enough to warrant summary judgment. Although probative, the video evidence does not resolve several material factual disputes. For example, a reasonable jury could conclude plaintiff reached for the waist band of his pants, but it could also conclude he simply moved his arms as he was walking. (Doc. 92-6 ("Brooks BWC") at 00:48–0:51). Nor does the video evidence clearly capture the altercation between plaintiff and Brooks and Schock. The video evidence shows that plaintiff ends up pressed against the wall, but it is unclear whether he was slammed into it. (Id. at 00:51–1:14). There is also no sound available during this part of the video. (Id.). Further, the video does not show exactly where and how plaintiff was grabbed in order to end up laying on the ground under Officer Schock. (Id. at 1:14–1:30). Lastly, although plaintiff can be heard screaming "Ow" and "I can't feel my leg" (id. at 1:30, 3:18), it is unclear exactly when plaintiff's leg was injured.

As such, the video evidence "does not conclusively resolve material fact issues." Alvear v. Kamel, 2023 WL 5593914 at *2. Nor does it "utterly discredit[]" one party's testimony. Zellner v. Summerlin, 494 F.3d at 371. Therefore, the video evidence does not compel the granting of summary judgment for either side. Alvear v. Kamel, 2023 WL 5593914, at *2.

At bottom, the partially unclear video evidence and the parties' competing narratives create questions of fact that are central to plaintiff's claim.

8

C.    De Minimis Injuries

Defendants also argue the Fourth Amendment excessive force claims should be dismissed because plaintiff's injuries were de minimis.  (Doc. #99 at 8–10).

The Court disagrees.

Dismissing excessive force cases because plaintiff did not suffer severe or long-lasting injury would be "plainly perverse."  See e.g., Yang Feng Zhao v. City of New York, 656 F. Supp. 2d 375, 391 n.9 (S.D.N.Y. 2009); Franks v. New Rochelle Police Dep't, 2015 WL 4922906, at *14 (S.D.N.Y. Aug. 18, 2015).  Indeed, the Second Circuit has made clear that summary judgment should not be granted on an excessive force claim "merely because the injuries were minor even where the force was unreasonable."  Ketcham v. City of Mount Vernon, 992 F.3d 144, 150 (2d Cir. 2021).  "While the absence of serious injury is certainly a matter that the jury can consider in assessing . . . the reasonableness of the force," summary judgment should not be granted "on this basis alone."  Id. at 151.  Thus, defendants' arguments in favor of summary judgment because plaintiff suffered only de minimis injuries are unpersuasive.

In any event, the record does not unambiguously support the conclusion that plaintiff's injuries were so minimal that defendants did not use excessive force as a matter of law. Defendants' expert opined plaintiff did not sustain any significant injury to his leg and that the bruising on his thigh likely pre-existed the incident.  (Doc. #99 at 9–10).   But plaintiff was taken to the hospital following his arrest, where he was diagnosed with a hamstring strain.  (Doc. #92– 9 at 3).  Further, he testified he had trouble walking after the incident and that he needed to attend physical therapy.  (Pl. Dep. Tr. at 19, 86).  Thus, a reasonable jury could find plaintiff's injuries were not de minimis.

D.     Qualified Immunity

Defendants also argue the excessive force claims should be dismissed on the basis of qualified immunity.

The Court disagrees.

Qualified immunity shields government officials whose "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The scope of qualified immunity is broad, and protects "all but the plainly incompetent or those who knowingly violate the law."  Malley v. Briggs, 475 U.S. 335, 341 (1986).  "A qualified immunity defense is established if (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law."  Salim v. Proulx, 93 F.3d 86, 89 (2d Cir. 1996).  "Defendants bear the burden of establishing qualified immunity."  Garcia v. Does, 779 F.3d 84, 92 (2d Cir. 2015).

In the context of an excessive force claim, "the question for the purposes of qualified immunity is whether a reasonable officer could have believed that the use of force alleged was objectively reasonable in light of the circumstances."  Lennon v. Miller, 66 F.3d 416, 425 (2d Cir. 1995); see also O'Bert ex rel. Estate of O'Bert v. Vargo, 331 F.3d 29, 37 (2d Cir. 2003) ("[I]n Fourth Amendment unreasonable force cases, unlike in other cases, the qualified immunity inquiry is the same as the inquiry on the merits.").

Here, as discussed above, there is a genuine factual dispute concerning whether Brooks and Schock used excessive force against plaintiff.  Plaintiff's Fourth Amendment right to be free from the use of excessive force was clearly established at the time of the allegedly unlawful

10

conduct.  See Washpon v. Parr, 561 F. Supp. 2d 394, 407–08 (S.D.N.Y. 2008).  And because the Court cannot say as a matter of law that the officers' actions were reasonable, they are not entitled to qualified immunity.

**CONCLUSION**

Defendants' motions are DENIED.

Plaintiff's cross-motion is DENIED.

The Court will conduct a telephonic case management conference on **January 15, 2026 at 9:30 a.m.**, at which time the parties shall be prepared to discuss, among other things, the setting of a trial date and a schedule for pretrial submissions, as well as what good faith efforts they have made and will continue to make to settle this case.  To be clear, defense counsel is directed to contact plaintiff prior to that date to discuss settlement in good faith.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal.  See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

The Clerk is instructed to terminate the motions.  (Docs. ##91, 97, 104).

Chambers will mail a copy of this Opinion and Order, and all unpublished opinions cited herein, to plaintiff at the address on the docket.

Dated:  December 12, 2025
        White Plains, NY

SO ORDERED:

Vincent L. Briccetti
United States District Judge